# 99 DTA 105

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI, CAGUAS/HUMACAO/GUAYAMA
### PANEL SUSTITUTO II

SUCN. CECILIO HUERTAS BARBOSA, ET. ALS.
Apelados

v.

HOSPITAL ALEJANDRO BUITRAGO, ET. ALS.
Apelantes

Núm. KLAN-98-01438

San Juan, Puerto Rico, a 16 de marzo de 1999

Panel integrado por su Presidenta, Juez Pesante Martínez
y los Jueces señores Martínez Torres y Salas Soler

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El presente recurso de apelación tiene su origen en una demanda en daños y perjuicios incoada por los demandantes a consecuencia de la muerte de su causante habiendo intervenido negligencia del Estado Libre Asociado, únicos demandados contra quien se celebró el juicio en sus méritos. En el recurso ante nos se cuestiona únicamente la cuantía concedida como indemnización a los demandantes, por razón de ésta exceder los límites establecidos en el Artículo 2(a) de la Ley de Pleitos contra el Estado y la determinación del tribunal *a quo* de declarar inconstitucional dicho precepto legal. Revocamos.

### I

La señora Julia Laboy, causante de los demandantes, fue intervenida quirúrgicamente por el Dr. Luis M. Rodríguez González, médico cirujano con práctica de la medicina en Guayama. La operación fue llevada a cabo en el Hospital Alejandro Buitrago, institución operada, controlada y administrada por el Estado Libre Asociado de Puerto Rico. La operación era de carácter electiva y procuraba la remoción del útero, ovarios y liberar adherencias pélvicas. Al día siguiente de la operación la salud de Doña Julia agravó; estaba sudorosa, pálida con la presión sanguínea baja y presentaba un cuadro de posible sangrado interno. A las 12:30 de la medianoche del día siguiente se le sometió a una laparotomía exploratoria para determinar el origen de la hemorragia. Se encontró una hemorragia masiva en la cavidad abdominal y una laceración en el órgano del bazo con un hematoma masivo. A las 8:00 A.M. Doña Julia falleció.

Del informe Médico Forense suscrito por el Patólogo Forense, Dr. Francisco J. Landrón, surge que la causa de la muerte fue una hemorragia interna masiva debido a una laceración en el bazo producto de la primera intervención quirúrgica.

Examinada la totalidad de la prueba, el tribunal concluyó que el caso era uno claro de negligencia crasa determinada por el mal manejo de que fue objeto la paciente Doña Julia, a saber: (1) al realizar el Dr. Rodríguez González una operación que no era la indicada le laceró el bazo (.,-) al no realizarse las pruebas diagnósticas post operatorias para determinar la ubicación y extensión de la hemorragia interna que sufría; (3) al no consultar inmediatamente con un cirujano mayor cuando se tuvo conocimiento de que estaba sangrando (a las 10:00 A.M. del 25 de septiembre de 1988) y esperar casi todo un día y parte de la noche en donde se llama al Dr. Roque Nido Laracuente, quien en efecto la intervino quirúrgicamente; (4) al no tener sangre disponible a tiempo para evitar que la occisa muriera de un shock hipovolémico.

Habiéndose determinado la negligencia de la parte demandada, el tribunal condenó al Estado Libre Asociado a

indemnizar en daños y perjuicios a la parte demandante como sigue:

*"(a) Se compensan los daños y perjuicios por los sufrimientos y angustias mentales de cada uno de los catorce (14) hijos de la occisa Doña Julia Laboy Rosa en la suma básica de $100,000; o sea, la suma total de $1,400.000.00.*

*(b) Se fija en la cantidad de $280,000.00 los daños y perjuicios sufridos por la horrenda muerte que sufrió doña Julia al quedarse ésta sin sangre por todo un día, la cual se distribuirá por partes iguales entre todos sus hijos."*

Inconformes con la sentencia que antecede, el Estado Libre Asociado presentó el recurso de apelación del epígrafe. En él no se cuestiona la determinación de negligencia dictaminada por el tribunal sino que los Señalamientos de errores versan sobre la cuantía concedida por concepto de indemnización en exceso de los límites contemplados en la Ley de Pleitos contra el Estado. Modificamos la sentencia en controversia a los efectos de ajustarla a los límites máximos establecidos por dicho estatuto.

## II

La Ley de Pleitos Contra el Estado, en su Artículo 2(a), 32 L.P.R.A. sec. 3077, dispone lo siguiente en lo concerniente a los límites por el cual el Estado Libre Asociado accedió a ser demandado:

*"Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:*

*(a) Acciones por daños y perjuicios a la propiedad hasta la suma de setenta y cinco mil (75,000.00) dólares causados por acción u omisión de cualquier funcionario, agentes empleados del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de sufrimiento, cargo o empleo interviniendo culpa o negligencia. Cuando por tal acción u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un sólo perjudicado, la indemnización por todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil (150,000.00) dólares. Si de las conclusiones del tribunal surgiera que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil ($150,000.00) dólares, el tribunal procederá a distribuir dicha suma entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno."*

El precepto que antecede está libre de toda ambigüedad y el Tribunal Supremo ha tenido oportunidad de expresarse en torno a la constitucionalidad del mismo. A escasos tres años de haberse resuelto el caso que nos ocupa, en *González Pérez v. E.L.A.,* \_\_\_ D.P.R. \_\_\_(1995), **95 J.T.S. 52,** opinión de 26 de abril de 1995, citando a *Defendini Collazo v. E.L.A.,* \_\_\_ D.P.R.\_\_\_ (1993), **93 J.T.S. 119,** opinión de 15 de julio de 1993, se rechazó el argumento de que los límites establecidos por la Ley de Pleitos Contra el Estado violaban los principios constitucionales del debido proceso de ley e igual protección de las leyes.

En lo referente al argumento de que el estatuto bajo discusión viola el principio de igual protección de las leyes consagrado en nuestra constitución, el Tribunal Supremo en *Defendini* consignó lo siguiente:

*"Los recurrentes sostienen que la ley creó una clasificación discriminatoria [en violación a la igual protección de las leyes] al distinguir entre las reclamaciones contra el Estado y las que son entes privados. En las primeras sólo se compensa hasta el límite dispuesto por ley, mientras que para las segundas no hay límite. **Consideramos que existe nexo racional entre el interés en proteger el fisco y la limitación a la cuantía compensable pues esta clasificación responde a diferencias reales entre el Estado y un ente privado. A través del***

*Estado los ciudadanos reciben servicios tales como la seguridad pública y servicios médicos, entre otros. Para subvencionarlos cuenta con recursos de naturaleza limitada. Por el contrario, los entes privados no tienen estas responsabilidades... **Esta diferencia justifica la clasificación impugnada y demuestra que existe nexo racional entre el interés del Estado en la protección del fisco y la limitación a las cuantías compensables".*** (Enfasis nuestro, citas omitidas).

Así tampoco la Ley 104 viola el debido proceso de ley al imponer límites económicos. Este argumento también fue objeto de discusión en *Defendini Collazo, supra.* Allí el Tribunal Supremo se expresó de la siguiente forma:

*"La Legislatura, en el ejercicio de su poder de razón de estado, goza de amplia facultad para aprobar reglamentación económica dirigida a proveer el bienestar de la comunidad. La única que tiene es la dispuesta por la garantía del debido proceso de ley."* (Citas omitidas).

*".......*

*El derecho a instar una demanda en daños y perjuicios constituye un interés propietario de los recurrentes. (Citas omitidas). Como expusimos anteriormente el interés del Estado en la protección del fisco es uno legítimo que está razonablemente relacionado con la limitación económica dispuesta por la ley. Por lo tanto, lo único que tenemos que determinar es si los límites son claramente arbitrarios, de manera que violenten el debido proceso de ley.*

*La selección de los límites de $75,000 y $150,000 está basada en evidencia relativa al impacto económico que tiene en el fisco las reclamaciones contra el E.L.A. Por lo tanto, los límites tienen un fundamento racional y no son claramente arbitrarios."*

A la luz de estas determinaciones resolvemos que los Artículos 2 y 7 de la Ley Núm. 104, según enmendada, no violan la garantía del debido proceso de ley sustantivo. Estos no adolecen de vicio constitucional alguno. Por lo tanto, sostenemos su constitucionalidad. (A las págs. 11011 y 11012).

Reconocemos que la pérdida de un ser querido es difícil, por no decir imposible, de cuantificar en dólares y centavos. Más aún, como seres humanos nos solidarizamos con el dolor del prójimo, pero este hecho no nos faculta para alterar los límites dispuestos por la Ley Núm. 104. Nuestra función como jueces no incluye legislar ni mucho menos hacer caso omiso de los precedentes judiciales. *"Si por razón del transcurso del tiempo y el desarrollo de la economía debieran revisarse los límites dispuestos en 1983, esta es una labor que le corresponde a la Asamblea Legislativa". Defindini Collazo v. E.L.A., supra,* a la pág. 11011.

Cónsono con lo precedentemente expuesto revocamos la sentencia en controversia. Se modifica la compensación concedida de forma tal que se otorgue a la parte demandante el máximo contemplado en el Artículo 2 de la Ley de Pleitos Contra el Estado: $150,000.00.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General